OPINION OF THE COURT
Max Bloom, J.
Petitioners, the Court Clerks Benevolent Association, the New York State Court Clerks Association and the New York State Court Officers Association and the intervening petitioners, New York State Supreme Court Officers Association and the Association of Surrogate’s and Supreme Court Reporters *423 within the City of New York, bring this CPLR article 78 proceeding against Judge Richard J. Bartlett, as Chief Administrative Judge of the Unified Court System of the State of New York, to enjoin him from holding public hearings concerning the proposed classification of nonjudicial employees of the court system; from delegating or exercising any delegation of powers vested in the Chief Judge of the State, the Court of Appeals and the Administrative Board with respect to such proposed classification; from establishing any classification system or title standards for nonjudicial positions in the unified court system; and from implementing the classification system or plan of title standards for nonjudicial positions in the unified court system.
The matters here in controversy find origin in the adoption at the 1977 general election of a new section 28 of article VI of the New York State Constitution. The new section became effective April 1, 1978. Prior thereto, authority and responsibility for the administrative supervision of the court system was vested in the Administrative Board of the Judicial Conference. By the Constitution (NY Const, art VI, § 28 as it existed prior to April 1, 1978), and by statute (Judiciary Law, § 210), the Administrative Board consisted of the Chief Judge of the Court of Appeals and the Presiding Justices of the Appellate Divisions of the four departments. The 1977 amendment constituted the Chief Judge of the Court of Appeals as the Chief Judge of the State. It continued the Administrative Board and authorized the Chief Judge to appoint a Chief Administrator of the courts with the advice and consent of the Administrative Board (NY Const, art VI, § 28, subd a). The Chief Administrator was authorized to supervise "the administration and operation of the unified court system”. In the exercise of such responsibility, he was to be possessed of "such powers and duties as may be delegated to him by the chief judge and such additional powers as may be provided by law.” (NY Const, art VI, § 28, subd b.)
Article VI (§ 28, subd c) of the State Constitution authorizes the Chief Judge, after consultation with the Administrative Board, to establish standards and administrative policies for the court system which shall thereupon be submitted to the Court of Appeals. When so approved, they shall be promulgated by that court.
To implement the constitutional amendment, the Legislature amended sections 211, 212 and 213 of the Judiciary Law *424 (L 1978, ch 156). The supervisory functions of the Chief Judge were defined in section 211 and included, among other things, the power to establish standards and policies with reference to "[personnel practices affecting nonjudicial personnel including: title structure, job definition, classification, qualifications, appointments, promotions, transfers, leaves of absence, resignations and reinstatements, performance ratings, removal, sick leaves, vacations and time allowances.” (Judiciary Law, § 211, subd [d],) The duties of the Chief Administrator are defined in section 212 of the Judiciary Law. Those set forth in subdivision 1 of section 212 are purely supervisory. Those specified in subdivision 2 deal, in part, with the limited powers of the Chief Administrator over judicial personnel. Section 213 of the Judiciary Law relegates the Administrative Board to purely consultative functions.
In conformity with the constitutional provisions, the Chief Judge promulgated "Standards and Administrative Policies”, which had been developed in consultation with the Administrative Board and approved by the Court of Appeals. On March 31, 1978, the Chief Judge delegated certain powers to the Chief Administrator. Included among the powers expressly delegated was the power to "[ajdopt classifications and allocate positions for nonjudicial officers and employees of the unified court system and revise them when appropriate”.
On October 4, 1978, copies of the final plan of classification of nonjudicial personnel, consisting of two volumes, one explaining the proposed classification system, containing 269 numbered pages and the other comprising the title standards and qualifications, of approximately the same length, were made available to representatives of petitioners. Hearings on the plan commenced on October 23, 1978 and continued until stayed. The schedule of hearings provided for their conclusion on November 2, 1978.
In the introduction to the proposed plan, the Chief Administrator notes the nature of the plan and states: "All suggestions made during the hearing will be considered, and appropriate revisions will be made to the title and salary proposals in consultation with the Administrative Board of the Courts before they are submitted to the Chief Administrator of the Courts for final approval”. (Emphasis supplied.) Petitioners contend that final approval of the proposed plan by the Chief Administrator is a function expressly reserved to the Chief Judge under subdivision (d) of section 211 of the Judiciary *425 Law and that the delegation of that power by the Chief Judge to the Chief Administrator constituted an unlawful delegation of authority and, hence, is void.
While the judicial branch of government, as a separate, distinct and independent branch, has always been responsible for its own administration, the method of administration in this State has, from time to time, varied. In this century at least three methods of administration are identifiable. Prior to the 1961 court consolidation plan, the separate courts were administered by boards of Justices or Judges. These boards had control over their own budgets, a right enforceable by mandamus (Matter of Wingate v McGoldrick, 279 NY 246; Matter of Moskowitz v La Guardia, 294 NY 830), and, save as it voluntarily relinquished the power, complete control over the nonjudicial personnel whom it appointed. The 1961 court consolidation amendments vested supervision of the courts in an Administrative Board of the Judicial Conference which was composed of the Chief Judge and the Presiding Justices of the four Appellate Divisions. Direct supervision over the courts within their respective jurisdictions was placed in the Appellate Divisions (NY Const, art VI, § 28). Budgetary power was removed from the courts and made subject to control by the appropriating authorities (NY Const, art VI, § 29); Matter of Alweis v Wagner, 14 NY2d 922). Indeed, control by the Judges over their own personal appointees was lost as a result of the inability or failure of the appropriating authority to fund the positions (Matter of Blyn v Bartlett, 39 NY2d 349).
The 1977 amendments changed, in substantial measure, the administration of the judicial system. It relegated the Administrative Board to consultative status. It gave the Court Administrator constitutional status with complete power to supervise the administration and operation of the court system. It made him independent of the Chief Judge, save only that he was subject to appointment and dismissal by him.
In the enactment of the revised sections 211 and 212 of the Judiciary Law (L 1978, ch 156) the Legislature manifested a clear intent to separate policy and administrative functions. It recognized that it was dealing with a separate, co-ordinate and self-governing branch of government. In delineating the powers allocated to the Chief Judge and to the Chief Administrator, it granted the Chief Judge power to fix "standards and administrative policies”. To the Chief Administrator, it delegated supervision of the day-to-day operation of the courts. *426 Indeed, in the area here in dispute, it granted to the Chief Administrator (Judiciary Law, § 212, subd [m]), the function of undertaking "research, studies and analyses of the administration and operation of the unified court system including, but not limited to, the organization, budget, jurisdiction, procedure and administrative, clerical, fiscal and personnel practices thereof.” (Emphasis supplied.) To the Chief Judge, it reserved the establishment of standards and administrative policies dealing with personnel practices affecting nonjudicial personnel in the respects here involved (Judiciary Law, § 211, subd [d]).
The division of this total power over personnel practices into discrete functions and the allocation of separate duties to different officials with respect thereto makes it plain that the Legislature intended that both powers were not to be vested in the same official. Thus, the delegation of the power of the Chief Judge over personnel practices to the Chief Administrator constituted a coupling of power which violated the expressed intent of the Legislature. Necessarily, it was violative of the statutory pattern, and, therefore, an illegal delegation of power.
To hold that the Chief Judge may not delegate the power does not mean that he must personally compile the classifications or personally conduct the hearings thereon. He may designate a person of his choice to perform these functions and to report to him his conclusions. If the Chief Judge so desires, that person may be the Chief Administrator or a member or members of his staff. However, he may not delegate the responsibility of adoption to someone else. That responsibility is his and his alone.
Accordingly, the application is granted.